UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDALL HEATH,<br><br>            Petitioner,<br><br>     v.<br><br>WARDEN, FCI MENDOTA,<br><br>            Respondent. | No.  1:22-cv-01529-HBK (HC)<br><br>OPINION AND ORDER GRANTING RESPONDENT'S MOTION TO DISMISS[1]<br><br>(Doc. No. 8) |

Petitioner Randall Heath (Petitioner or Heath), a federal inmate, initiated this action on November 28, 2022 by filing a pro se petition for writ of habeas corpus under 28 U.S.C. § 2241, while he was incarcerated at Federal Correctional Institution (FCI) Mendota, located in Fresno County, California, which is within the venue and jurisdiction of this Court.  (Doc. No. 1, Petition).  The Petition raises two claims: (1) the Bureau of Prisons (BOP) violated the First Step Act of 2018 because it refuses to permit inmates to earn and apply times credits toward their sentences if they decline to participate in evidence-based recidivism reduction programs or productive activities recommended by BOP staff; and (2) the BOP failed to  calculated Petitioner's  sentence accurately because his current sentence calculation does not include the time credits he earned for participating in classes of his choosing.  (Doc. No. 1 at 6, 9); *see* 18

---

[1] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. § 636(c)(1).  (Doc. No. 7).

1

U.S.C. § 3632(d)(4)(A), (C) (providing that FTCs earned from completion of evidence-based recidivism reduction programs (EBBRs) and productive activities (PAs) shall be applied toward time in prerelease custody or supervised release).  Petitioner provides no specific number of FTCs to which he is entitled; rather, he asks the Court to "enjoin the BOP to award [F]TCs for "any EBRR program or [PA] activities [he] participates in as per the First Step Act of 2018" and "enjoin the BOP to change its policy concerning the same." (Doc. No. 1 at 7).  Petitioner admits he did not exhaust his administrative remedies because he is challenging a policy, so exhaustion is futile.  (*Id*. at 7).

In response, Respondent filed a Motion to Dismiss with Appendix on February 10, 2023. (Doc. Nos. 8, 8-1).  Respondent seeks dismissal of Petition because this Court lacks statutory authority under § 2241 to compel discretionary action via declaratory and advisory opinions, and because Petitioner failed to exhaust his administrative remedies for both grounds.  (Doc. No. 8 at 2).  Moreover, Respondent argues "Petitioner's demand that this Court legislate and manage BOP's discretionary authority generally, and particularly for Petitioner, is without legal merit." (*Id*.).  Petitioner filed neither a response to the motion nor a request for an extension of time to respond, and the time for doing so has expired.  (*See* Doc. No. 4 at ¶ 4, advising Petitioner that he has twenty-one (21) days to file a response if Respondent files a motion to dismiss).  The Court grants Respondent's Motion to Dismiss.

## I. BACKGROUND

### A. Procedural History

Heath is serving a 156-month sentence after pleading guilty to federal crimes including conspiracy to distribute fentanyl and marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846, and conspiracy to commit money laundering promotion and concealment in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i), imposed by the United States District Court for the District of Utah (D-UT) in 2019.  *See United States v. Waldron et al.*, 2:18-cr-00031-TC-2, Crim. Doc. Nos. 43, 454, 456 (D. Ut.)[2]; Doc. No. 8-1.  Heath is incarcerated at FCI Mendota.

---

[2] The undersigned cites to the record in Petitioner's underlying D-UT criminal case as "Crim. Doc. No. _.".

2

Heath's current projected release date, including adjustments for possible good time credits is July 13, 2029. (Doc. No. 8-1 at 3, 11-12). He has earned 35 FTCs toward RRC or home confinement and 365 FTCs toward early supervised release; however, he is ineligible to apply time credits as he is scored at a medium recidivism risk level and has an unresolved pending charge. (*Id*. at 9, 21).

## II. APPLICABLE LAW AND ANALYSIS

Under Rule 4, if a petition is not dismissed at screening, the judge "must order the respondent to file an answer, motion, or other response" to the petition. R. Governing 2254 Cases 4. The Advisory Committee Notes to Rule 4 state that "the judge may want to authorize the respondent to make a motion to dismiss based upon information furnished by respondent." A motion to dismiss a petition for writ of habeas corpus is construed as a request for the court to dismiss under Rule 4 of the Rules Governing Section 2254 Cases. *O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990). Under Rule 4, a district court must dismiss a habeas petition if it "plainly appears" that the petitioner is not entitled to relief. *See Valdez v. Montgomery*, 918 F.3d 687, 693 (9th Cir. 2019); *Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998).

### A. Failure to Exhaust Administrative Remedies

"Federal prisoners [generally] are required to exhaust their federal administrative remedies prior to bringing a petition for a writ of habeas corpus in federal court." *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986); *see also Ward v. Chavez*, 678 F.3d 1042 (9th Cir. 2012). However, the requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement. *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds by Reno v. Koray*, 515 U.S. 50, 54-55 (1995). Because exhaustion is not required by statute, it is not jurisdictional. *Id*. (citing *Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc*., 811 F.2d 1209, 1223 (9th Cir. 1987)). If petitioner has not properly exhausted his claims, the district court, in its discretion, may "determine whether to excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his administrative remedies before proceeding in court." *Id*.

Requiring a petitioner to exhaust administrative remedies (1) aids judicial review "by

allowing the appropriate development of a factual record in an expert forum," (2) conserves "the court's time because of the possibility that the relief applied for may be granted at the administrative level," and (3) allows "the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings." *Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983) (per curiam). Dismissal is appropriate when a federal prisoner has not exhausted the administrative remedies made available by the BOP. *See Quinonez v. McGrew*, 649 F. App'x 475 (9th Cir. 2016) (affirming district court's dismissal of a § 2241 petition where the petitioner "did not complete any level of the BOP's Administrative Remedy Program and there is no indication that his pursuit of those remedies would be futile"). However, the Court may waive the exhaustion requirement when administrative remedies are inadequate, irreparable injury may occur without immediate judicial relief, or exhaustion otherwise would be futile. *Laing v. Ashcroft*, 370 F.3d 994, 1000-01 (9th Cir. 2004) ("[D]istrict court's habeas jurisdiction under 28 U.S.C. § 2241 is ordinarily reserved for instances in which no other judicial remedy is available.").

When seeking administrative remedies, an inmate must first attempt informal resolution (BP-8). 28 C.F.R. § 542.13. Thereafter, the BOP makes available a formal three-level Administrative Remedy Program: (1) a Request for Administrative Remedy (BP-9) filed at the institution where the inmate is incarcerated; (2) a Regional Administrative Remedy Appeal (BP-10) filed at the Regional Office for the geographic region in which the inmate's institution is located; and (3) a Central Office Administrative Remedy Appeal (BP-11) filed with the Office of General Counsel. 28 C.F.R. § 542.10 et seq.

Here, Heath concedes that he did not present either of his two grounds for relief at any level because he is challenging a BOP policy, and therefore any appeal would be futile. (Doc. No. 1 at 7). However, the Petition also makes assertions regarding the accrual, or lack thereof, of FTCs for Petitioner's own participation in classes of his choosing, including the "Threshold program" listed in his Petition (Doc. No. 1 at 9), and therefore does not solely challenge a matter of policy. As argued by Respondent, "[f]or petitions challenging BOP individualized sentence calculations and offsets (projected and or [sic] earned), enforcing exhaustion requirements is

essential at least to allow the administrative agency to develop a factual record, apply its expertise, and correct its own errors, thereby conserving court resources and avoiding unnecessary judicial intervention." (Doc. No. 8 at 4 (citing *Ruviwat*, 701 F.2d at 845)). The Court further notes that district courts in the Ninth Circuit have declined to waive exhaustion where petitioner made claims of futility in the context of earned time credits under the FSA. *See, e.g., Jones v. Thompson*, 2021 WL 5397711, at *2 (Nov. 18, 2021) (noting district courts in this circuit "to consider the exhaustion issue as it applies to similar claims for earned time credits under the First Step Act have declined to waive exhaustion"); *Baldovinos-Molina v. Birkholz*, 2023 WL 4373306, at *2 (C.D. Cal. May 16, 2023) (collecting cases and noting that "excusal of the exhaustion requirement as to petitioner may encourage others similarly situated to bypass the requirement").

This Court finds an assessment of whether Petitioner was entitled to accrued FTCs under the FSA for his "chosen" programming should be undertaken by the agency in the first instance. Thus, the exhaustion requirement cannot be excused in this case. Thus, the Petition is subject to dismissal because neither ground is exhausted.

**B. BOP Policy**

The First Step Act (FSA), enacted December 21, 2018, provided for considerable changes to the federal criminal code, including several prison and sentencing reforms. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018). One such reform under the First Time Act entailed the implementation of Federal Time Credits (FTCs). 18 U.S.C. § 3632(d)(4)(A). Essentially, an inmate "who successfully completed evidence-based recidivism reduction programming or productive activities" "shall earn 10 days of time credits for every 30 days of successful participation." *Id*. These FTCs earned by eligible inmates are "applied toward time in prerelease custody or supervised release." *Id.*

The FSA additionally authorized the BOP to use a risk and needs assessment system, "PATTERN," to designate a prisoner with a minimum, low, medium, or high-risk score. *United States v. DeCaro,* No. 2022 WL 4395905, at *1 n.1 (E.D. Mo. Aug. 23, 2022). Inmates who receive a minimum or low-risk score over two consecutive assessments earn an additional five

1    days of time credits for every 30 days of successful participation in evidence-based recidivism

2    reduction (EBBR) programming or productive activities (PA).  18 U.S.C. § 3632(d)(4)(A)(ii);

3    *Orihuela v. Engleman*, 2022 WL 18106676, at *1 (C.D. Ca. Nov. 3, 2022) ("A prisoner's

4    PATTERN score may affect the rate at which he earns FTC for his participation in EBRRs and

5    Pas.").

6        Inmates may begin earning FTCs once their term begins, but an inmate cannot earn FTCs

7    for programming or activities for EBBR programing or PA in which he or she participated in

8    *prior to the enactment of the FSA* on December 21, 2018.  28 C.F.R. § 523.42.  An inmate,

9    however, can earn retroactive application of FTCs for EBRR programming or PAs in which he or

10   she participated in from December 21, 2018, to January 13, 2022.  *Id*.

11       Heath argues that his "current sentence calculation" is inaccurate because it does not

12   include FTCs for participating in "classes" of his choosing, and BOP's policy is generally "in

13   contravention of" the First Step Act because it "does not authorize the BOP to exclude [him] from

14   obtaining [earned time credits] of [his] choosing." (Doc. No. 1 at 6, 9).  Heath asks the Court to

15   "enjoin" the BOP form its current policy and "change this policy" to award him FTCs for EBRRs

16   and PAs of his choosing.  (*Id*. at 7).  In support of this argument, Petitioner filed a declaration

17   stating he is currently enrolled in the "Threshold Program" and "was informed by the chaplain

18   that [he] would not receive [earned time credits] because it was not recommended under their

19   [PATTERN] system." (*Id*. at 9).  Petitioner also attached, as Exhibit A, a document entitled

20   "Inmate Message: FTC Auto-Calculation Transition Update," which states if an inmate declined

21   to participate in EBRR programs or PAs recommended based on their identified need areas," they

22   are not in earning status, nor are they eligible to apply any credit.  (*Id*. at 11).

23       A district court has jurisdiction to review claims alleging that BOP undertook action that

24   is contrary to established federal law, violates the U.S. Constitution, or exceeds its statutory

25   authority vested in the agency by Congress.  *Moon v. Thomas*, 787 F. Supp. 2d 1154, 1160 (D.

26   Or. Apr. 1, 2011); *Reeb v. Thomas*, 636 F.3d 1224, 1228 (9th Cir. 2011) (finding that while

27   judicial review is available for BOP actions contrary to federal law or in violation of the

28   Constitution, or claims the BOP exceeds statutory authority, federal courts lack jurisdiction to

1 review BOP's individualized determinations made pursuant to 18 U.S.C. § 3632).

2 Here, Petitioner cites to no portion of the FSA to support his argument that he is entitled under the statute to "choose" the EBRR programming and PAs that would qualify to earn FTCs. To the contrary, 18 U.S.C. § 3632 mandates that the Attorney General, through the BOP and with other agencies and entities, develop a "risk and needs assessment system" that, in relevant part, "determine[s] the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly, and based on the prisoner's specific criminogenic needs." 18 U.S.C. § 3632(a)(3), (b). Further, in 2022 the BOP promulgated regulations for determining "successful participation" in EBRR programming or PAs that requires "a determination by Bureau staff that an eligible inmate has participated in the EBRR programs or PAs that BOP has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA." (Doc. No. 8 at 6 (citing 28 C.F.R. § 523.41(c)(2)); *see also* Doc. No. 8-1 (citing BOP Program Statement 5410.01 at 11) ("While [EBRR programs or PAs] are voluntary, the refusal to participate can result in the loss of certain benefits including the inability to earn FTCs.")).

As correctly pointed out by Respondent, Petitioner's claim that BOP action is contrary to the FSA because he is "excluded" from obtaining FTCs "of [his] choosing" is without merit because "it is entirely appropriate, as sanctioned by the FSA and the applicable CFR, for the BOP to permit the earning of time credits only as to those programs and activities assigned or recommended by it." (Doc. No. 8 at 6). Moreover, even assuming, arguendo, that Petitioner could earn FTCs based on his chosen programs and activities, the statute does not allow for the application of time credits in this case because it limits eligibility to inmates who pose a minimum to low risk of recidivism. 18 U.S.C. § 3624(g)(1)(A)-(D). Petitioner has been determined to be at a medium risk of recidivating, and is therefore statutorily ineligible for application of earned time credits. (Doc. No. 8-1 at 3, 11-12). Thus, even if the Court were to waive the exhaustion requirement, Petitioner's claims nonetheless are without merit.

////

7

Accordingly, it is **ORDERED**:

1. Respondent's Motion to Dismiss (Doc. No. 8) is GRANTED.

2. The Petition is DISMISSED as unexhausted and otherwise without merit.

3. The Clerk of Court is directed to terminate any pending motions and close this case.

Dated:   August 20, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE